## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) JOHNNY DALE FLOYD; (2) VIRGINIA FLOYD; (3) JENNIFER GAIL ROBINSON; (4) LORENA ANN GOFORTH; and (5) JOANNA PAUL,**<br><br>**Plaintiffs.**<br><br>**v.**<br><br>**(1) BP p.l.c.; (2) ATLANTIC RICHFIELD COMPANY; (3) BP CORPORATION NORTH AMERICA INC.; (4) BP AMERICA INC.; (5) BP PIPELINES (NORTH AMERICA) INC.; (6) MARATHON OIL CORPORATION; (7) MARATHON OIL COMPANY; (8) MARATHON PETROLEUM CORPORATION; (9) MARATHON PETROLEUM COMPANY LP; (10) KINDER MORGAN, INC.; (11) EPEC OIL COMPANY LIQUIDATING TRUST; (12) EL PASO TENNESSEE PIPELINE CO., L.L.C.; (13) EL PASO ENERGY, E.S.T. CO.; (14) EPEC OIL COMPANY; (15) MIDWESTERN GAS TRANSMISSION CO.; (16) BOLIN OIL COMPANY, a partnership, its partners, (17) DANIEL HOUSTON BOLIN, (18) DANIEL PHILLIPS BOLIN, (19) ROBERT LEE BOLIN, (20) CHARLES WILLIAM BOLIN, and the successors of the Bolins; and (21) PHILLIP ELIAS,**<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Case No. 4:21-CV-132-CVE-CDL**<br><br>**(Removed from the District Court of Creek County, Bristow Division Case No. BCJ-2020-00025)** |

### MARATHON DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

Kenneth H. Blakley, Esq.
**EDINGER LEONARD & BLAKLEY**
**Attorneys for the Marathon Defendants**

Date: March 31, 2021

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................6

PLEADING STANDARD.............................................................................................7

ARGUMENT AND AUTHORITY ...............................................................................8

 I. Plaintiffs' Bare Allegations of Harm are Insufficient
  to Plead the Injury That is an Element of All Their Claims ................................8

 II. Plaintiffs Fail to Plead Their Claim for Fraud and Deceit with the
  Particularity Required to Survive a Rule 12(b)(6) Motion to Dismiss ................11

 III. Plaintiffs Fail to State a Claim for Negligence Per Se............................15

 IV. Plaintiffs' Private Nuisance Claim Fails as a Matter of Law ...............17

 V. Plaintiffs' Strict Liability Claim is Not Legally Cognizable
  and is Unsupported by the Alleged Facts .............................................20

CONCLUSION.............................................................................................................27

## TABLE OF AUTHORITIES

**Statutes and Other Authorities**   **Page(s)**

Fed. R. Civ. P. 9(b) .........................................................................................12, 13

Fed. R. Civ. P. 12 (b)(6).........................................................................6, 7, 9, 28

Okla. Stat. tit. 12 O.S. § 95(A)(3)........................................................................20

Okla. Stat. tit. 50 O.S. §§ 1-3, 5-8, 10, 13 ....................................................11, 15

Oklahoma Uniform Fraudulent Transfers Act, 24 O.S. § 112 *et seq*............................10

Oklahoma Water Quality Act, 27A O.S. § 2-6-101 *et seq* ......................................15, 16

Oklahoma Solid Waste Management Act, 27A § 2-10-101 *et seq* .........................15, 16

Vernon's Okla. Forms 2d, Okla. Uniform Jury Instructions – Civil, No. 9.10 .............................17

**Cases**

*Aldrich v. McCulloch Properties, Inc.,*
 627 F.2d 1036 (10th Cir. 1980) ......................................................................20

*Alexander v. Smith & Nephew, P.L.C.,*
 98 F.Supp.2d 1287 (N.D. Okla. 2000)................................................................16

*Anderson v. Farmland Industries, Inc.,*
   136 F.Supp.2d 1192 (D.Kan. 2001) ...................................................................23, 27

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................................7

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................7, 9

*Blocker v. ConocoPhillips Company,*
   380 F.Supp.3d 1178 (W.D. Okla. 2019) ...................................................................19

*Boman v. Presley,*
   212 P.3d 1210 (Okla. 2009) ......................................................................................11

*Bristow First Assembly of God v. BP p.l.c.,*
   210 F.Supp.3d 1284 (N.D. Okla. 2016) ...........................10, 11, 13, 14, 15, 18, 21, 24

*Bristow First Assembly of God v. BP p.l.c.,*
   2017 WL 3123661 (N.D. Okla. July 21, 2017) ........................................................15

*Chaveriat v. Chase Manhattan Mortg. Corp.,*
   2007 WL 2815246 (N.D. Okla. Sept. 24, 2007) .......................................................11

*Chaveriat v. Williams Pipe Line Co.,*
   1994 WL 583598 (N.D.Ill. Oct.18, 1994) ..........................................................23, 27

*Christian v. Gray,*
   65 P.3d 591 (Okla. 2003) ..........................................................................................10

*City of Mangum v. Brownlee,*
   75 P.2d 174 (Okla. 1938) ..........................................................................................22

*Consolidated Grain & Barge Co. v. Structural Systems, Inc.,*
   212 P.3d 1168 (Okla. 2009) ......................................................................................10

*Cummings v. Dean,*
   913 F.3d 1227 (10th Cir. 2019) ..................................................................................7

*D & H Co. v. Shultz,*
   579 P.2d 821 (Okla. 1978) ........................................................................................12

*Davis v. City of Tulsa,*
   87 P.3d 1106 (Okla. Civ. App. 2004) ......................................................................21

*Dura Pharmaceutials, Inc. v. Broudo,*
   544 U.S. 336 (2005) ...................................................................................................8

*Erbrich v. Wills,*
   509 N.E.2d 850 (Ind. App. 1st Dist. 1987) ..............................................................23

*Eskridge v. Nalls,*
    852 P.2d 818 (Okla.Civ.App.1993) ....................................................................10

*Evans v. Asarco Inc.*,
    2010 WL 711193 (N.D. Okla. Feb. 24, 2010) ....................................................20

*Fairlawn Cemetery Ass'n. v. First Presbyterian Church,*
    496 P.2d 1185 (Okla.1972) ...............................................................................18

*Fletcher v. Conoco Pipe Line Co.,*
    129 F.Supp.2d 1255 (W.D. Mo. 2001) ....................................................23, 24, 25

*Gulf Pipe Line Co. of Oklahoma v. Sims,*
    32 P.2d 902 (Okla. 1934)...................................................................................22

*Hall v. Amoco Oil Co.,*
    617 F.Supp. 111 (Tex. S. Dist. Court 1984) ......................................................23

*Howard v. Zimmer, Inc.,*
    299 P.3d 463 (Okla. 2013).............................................................10, 15, 16, 17

*Ind. Harbor Belt R. Co. v. Am. Cyamid Co.*,
    916 F.2d 1174 (7th Cir. 1990) ..........................................................................25

*Insurance Co. of North America v. Sheinbein,*
    488 P.2d 1273 (Okla. 1971) ..............................................................................21

*Khalik v. United Air Lines,*
    671 F.3d 1188 (10th Cir. 2012) ..........................................................................7

*Koch v. Koch Indus.,*
    203 F.3d 1202 (10th Cir. 2000) ........................................................................12

*Metropolitan Life Insurance Company v. Bradshaw,*
    450 F.Supp.3d 1258 (W.D. Okla. 2020) ............................................................11

*Mitchell v. Gencorp, Inc.,*
    165 F.3d 778 (10th Cir. 1999) ............................................................................9

*Moore v. Texaco, Inc.,*
    244 F.3d 1229 (10th Cir. 2001) ....................................................................18, 19

*N.C. Corff Partnership, Ltd. v. OXY USA, Inc.,*
    929 P.2d 288 (Okla. Civ. App.1996) .................................................................20

*Nichols v. Mid-Continent Pipe Line Co.,*
    933 P.2d 272 .....................................................................................................17

*Norris v. Baxter Healthcare Corporation,*
    397 F.3d 878 (10th Cir. 2005) ............................................................................9

*Philadelphia Elec. Co. v. Hercules, Inc.*,
762 F.2d 303 (3d Cir. 1985) ..............................................................................18

*Ramsey v. Fowler*,
308 P.2d 654 (Okla. 1957)..................................................................................12

*Seismograph Service Corp. v. Buchanan*,
316 P.2d 185 (Okla. 1957)..................................................................................22

*Reece v. AES Corp.*,
2014 WL 61242 (E.D. Okla. Jan. 8, 2014) .................................................9, 25, 26

*Reece v. AES Corp.*,
638 Fed. Appx. 755 (10th 2016)....................................................................9, 26

*Ridge at Red Hawk, LLC v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) .............................................................................7

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) ................................................................7, 8, 9, 16

*Roberts v. C.F. Adams & Son*,
184 P.2d 634 (Okla. 1947)..................................................................................19

*Ross v. Univ. of Tulsa*,
2015 WL 4064754 (N.D. Okla. July 2, 2015) ......................................................16

*Silk v. Phillips Petroleum Co.*,
760 P.2d 174 (Okla. 1988)..................................................................................12

*Silkwood v. Kerr-McGee Corp.*,
485 F.Supp.566 (W.D. Okla. 1979) ....................................................................22

*Specialty Beverages, LLC v. Pabst Brewing Co.*,
537 F.3d 1165 (10th Cir. 2008) .....................................................................13, 14

*State ex rel. Southwestern Bell Tel. Co. v. Brown*,
519 P.2d 491 (Okla. 1974)..................................................................................12

*Taylor v. Hesser*,
991 P.2d 35 (Okla. Civ. App. 1998) ...............................................................21, 22

*U.S. ex rel. Schwarz v. Coastal Healthcare Group*,
232 F.3d 902 (10th Cir. 2000) (table), (2000 WL 1595976) ..............................14

*Uptegraft v. Dome Petroleum Corp.*,
764 P.2d 1350 (Okla. 1988)................................................................................14

*Young v. Darter*,
363 P.2d 829 (Okla. 1961)..................................................................................22

Pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, Defendants Marathon Oil Corporation, Marathon Oil Company, Marathon Petroleum Corporation, and Marathon Petroleum Company LP (collectively the "Marathon Defendants" for purposes of this Motion) move this Court for an order dismissing all of Plaintiffs' claims against them on the ground that they fail to state a claim upon which relief may be granted.  In support of this Motion, the Marathon Defendants state as follows:

## **BACKGROUND**

Johnny Dale Floyd served as pastor of the Bristow First Assembly of God ("Church") from approximately 1991 through 1995. Petition, ¶ 1. During that four-year period, Floyd and his family (collectively "Plaintiffs") resided in the parsonage located on the Church Property in Creek County, Oklahoma ("Parsonage"). *Id*.  The Church Property is contained within the site of historic, and long abandoned Wilcox and Lorraine oil refineries ("Wilcox Site"). *Id.,* ¶ 24, Figure 2. The similarly historic and long abandoned Transcontinental Refinery is located to the north of the Church Property. *Id.*, ¶ 25.  Plaintiffs contend operations attributable to the Marathon Defendants and others ("Operational Defendants") allowed pollutants from the Wilcox Site and Transcontinental Refinery (the "Refineries") to contaminate the Church Property's soil and its surface and ground waters. *Id.*, ¶ 30-31. They further claim that the allegedly contaminated soil and water endangered their comfort, repose, health, and safety, or otherwise annoyed and injured them, rendering them insecure in life, health, and the use of property. *Id.,* ¶¶ 2, 33, 47.  Nothing in the Petition suggests Plaintiffs have had any connection to the Church Property or to the Refineries in the 25 years since they vacated the parsonage.

On November 6, 2020, Plaintiffs filed their Petition in the District Court of Creek County, Bristow Division, State of Oklahoma.  That action, numbered CJ-2020-25, was removed to this

Court on March 24, 2021 on the ground that there exists complete diversity of citizenship among all properly joined defendants. *See* Notice of Removal (Doc. No. 3). Because it fails to state a claim upon which relief may be granted, Plaintiffs' Petition against the Marathon Defendants should be dismissed in its entirety.

## PLEADING STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

 "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly,* 550 U.S. at 555 (internal quotations omitted)). "[M]ere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* (quoting *Khalik*, 671 F.3d at 1191).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to

be true." *Robbins*, 519 F.3d at 1247. Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

## ARGUMENT AND AUTHORITY

### I.  Plaintiffs' Bare Allegations of Harm are Insufficient to Plead the Injury That is an Element of All Their Claims.

Plaintiffs do not allege that they ever possessed any ownership interest in the Parsonage, nor do they allege they ever possessed any ownership interest in the Church Property or in any other lands at issue in this case. All their claims are based on alleged harm to their persons, including to their personal use and enjoyment of the Parsonage and Church Property during their brief four-year tenure over 25 years ago. They contend they "suffered and continue to suffer significant negative health effects, annoyance, inconvenience and other harm cause in part or in whole from Operational Defendants' pollution, activities, failure to act, failure to disclose, and coverup." Petition, ¶ 2. Plaintiffs allege they are entitled to recover "all damages to their persons, including personal harm, personal annoyance and inconvenience, endangerment of comfort, health, tranquility and safety, and for Plaintiffs having been rendered insecure in their lives, health and use of the Church, the Land and the parsonage." Petition, ¶ 47.

The Petition fails to allege *any* facts supporting Plaintiffs' allegations of personal harm, much less harm caused by the acts or omissions of the Marathon Defendants. *See Dura Pharmaceutials, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (complaint legally insufficient as it

failed to allege facts showing harm and a "causal connection" to defendants). A pleading "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)).  Plaintiffs' Petition asserts only vague and conclusory allegations of harm, devoid of any facts that could fulfill the pleading requirements. Plaintiffs allege no facts showing exactly what harms they purport to have suffered. They plead no facts to show that any individually-named Plaintiff has come into contact with any substance that has caused him or her to suffer any specific injury. Plaintiffs' bare allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A]llowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'. . . 'will not do.'" *Robbins*, 519 F.3d at 1247 (citations omitted) (quoting *Twombly*, 550 U.S. at 555, 570); *Reece v. AES Corp.,* 2014 WL 61242, *10 (E.D. Okla. Jan. 8, 2014) ("While, based on the allegations made, it is not improbable that the named plaintiffs individually sustained personal injuries or property damage as the result of the allegedly contaminated water. . . , *plaintiffs have not pleaded sufficient facts demonstrating those losses* to make it past a Rule 12(b)(6) motion.") (emphasis added).

In a toxic tort case such as Plaintiffs allege here, a plaintiff "must prove that he or she was exposed to and injured by a harmful substance manufactured by the defendant." *Mitchell v. Gencorp, Inc*., 165 F.3d 778, 781 (10th Cir. 1999) (emphasis added); *see also Reece v. AES Corp.,* 638 Fed. Appx. 755, 776 (10th 2016); *Norris v. Baxter Healthcare Corporation*, 397 F.3d 878, 881 (10th Cir. 2005) (in toxic tort litigation, "plaintiffs must show both general and specific causation. General causation is whether a substance is capable of causing a particular injury or condition" and "specific causation is whether a substance caused a particular individual's injury."

(citations omitted)); *see also Christian v. Gray*, 65 P.3d 591, 602 (Okla. 2003) (causation properly divided into "general causation" and "specific causation "in certain cases involving allegations of injury resulting from exposure to harmful substances").

A litigant is required to "allege injury or damages that are certain and not speculative." *Consolidated Grain & Barge Co. v. Structural Systems, Inc*., 212 P.3d 1168, 1171 n.8 (Okla. 2009). Plaintiffs' complete failure to allege facts showing injury, such as the identification of exactly who was harmed, the manner in which they were harmed, the result of the harm, or the Defendant responsible for the harm is fatal to their claims. Plaintiffs collectively assert claims for: 1) negligence, including negligence per se; 2) public nuisance; 3) private nuisance; 4) unjust enrichment; 5) strict liability; 6) fraud/deceit 7) fraudulent transfer and conspiracy;[1] and 8) fees and costs.  Injury is an *essential element* of each of those claims. *See Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013) (elements of a negligence per se claim are: (1) a claimed injury of a type intended to be prevented by the statute or regulation; (2) the injured party is a member of the class intended to be protected by the statute or regulation; and (3) the claimed injury was caused

---

[1] Plaintiffs assert as their Seventh Claim for Relief, a claim for fraudulent transfer and conspiracy. None of the allegations supporting that claim appear to encompass the Marathon Defendants.  To the extent the Marathon Defendants are included in that claim, Plaintiffs cannot allege any facts to show that they are creditors of the Marathon Defendants under the Oklahoma Uniform Fraudulent Transfers Act, 24 O.S. § 112 *et seq.* A cause of action for fraudulent transfers under the OUFTA does not accrue until recovery of judgment against the debtor. *Eskridge v. Nalls,* 852 P.2d 818, 820–21 (Okla.Civ.App.1993)*.* Plaintiffs therefore lack standing to assert such claim. *See Bristow First Assembly of God v. BP p.l.c.*, 210 F. Supp. 3d 1284, 1290 (N.D. Okla. 2016). To invoke the jurisdiction of the court there must be an actual, existing justiciable controversy between parties having opposing interests, and involve an actual, as distinguished from a potential or contingent dispute. *Id., see also* Notice of Removal (Doc. No. 3), ¶¶ 28-40.

by the statutory or regulatory violation); Okla. Stat. tit. 50, § 1("a nuisance [public or private] consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either" "[a]nnoys, injures or endangers the comfort, repose, health, or safety of others" or "[i]n any way renders other persons insecure in life, or in the use of property"); *Metropolitan Life Insurance Company v. Bradshaw*, 450 F. Supp. 3d 1258, 1265 (W.D. Okla. 2020) (unjust enrichment in Oklahoma consists of "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another."); *Bristow First Assembly of God v. BP p.l.c.*, 210 F. Supp. 3d 1284, 1295 (N.D. Okla. 2016) (to establish a cause of action for strict liability under Oklahoma law, a plaintiff must show injury directly and proximately caused by ultrahazardous conduct); *Boman v. Presley,* 212 P.3d 1210, 1218 (Okla. 2009) (elements of fraudulent misrepresentation in Oklahoma are: (1) a false material misrepresentation; (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth; (3) with the intention that it be acted upon; and, (4) which is relied upon to the other party to his or her detriment); *Chaveriat v. Chase Manhattan Mortg. Corp.,* 2007 WL 2815246, at *7 (N.D. Okla. Sept. 24, 2007) (Oklahoma has adopted the Uniform Fraudulent Transfer Act to provide a remedy for creditors who are injured when a debtor fraudulently transfers assets to avoid debt collection).

Plaintiffs have failed to allege an essential element of all their claims against the Marathon Defendants. Those claims should, therefore, be dismissed in their entirety.

## II.     Plaintiffs Fail to Plead Their Claim for Fraud and Deceit with the Particularity Required to Survive a Rule 12(b)(6) Motion to Dismiss.

Even apart from Plaintiffs' failure to sufficiently allege injury, they have failed to plead fraud with the particularity required to survive a motion to dismiss. The allegations of Plaintiffs' Sixth Claim for Relief suggest Plaintiffs seek to recover on theories of actual and constructive fraud. Plaintiffs allege both that the Operational Defendants "misrepresented their activities [with

respect to the Refineries and associated facilities] as being lawful," and that the Operational Defendants breached "a duty of full disclosure of the pollution they had created on the property." Petition, ¶ 52-53.

Under Oklahoma law, the elements of actual fraud are: (1) a material false representation of fact (or omission); (2) made with knowledge of their falsity or recklessly made without knowledge of their trust and as a positive assertion; (3) with the intention that they be acted upon by another; (4) justifiable reliance thereon by another party; and, (5) resulting injury. *See*, e.g., *D & H Co. v. Shultz*, 579 P.2d 821, 824 (Okla. 1978); *Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 176-77 (Okla. 1988); *Ramsey v. Fowler*, 308 P.2d 654, 655-56 (Okla. 1957); *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 519 P.2d 491, 495 (Okla. 1974) (all listing elements constituting fraud). The Tenth Circuit Court of Appeals has observed that Rule 9(b) "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).  Rule 9(b) "is intended "to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based…." *Koch*, 203 F.3d at 1236 (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992), overruled on other grounds).

Plaintiffs' Petition is wholly devoid of factual allegations supporting Plaintiffs' actual fraud claim. Plaintiffs fail to specify *any* representation, much less a material misrepresentation, made by the Marathon Defendants or their alleged predecessors to Plaintiffs. Rather, they flatly state, without any factual support, that the Operational Defendants collectively "misrepresented their activities as being lawful." Remarkably, Plaintiffs concede they "*do not know what affirmative*

*representations were made* by the Operational Defendants with respect to the contamination they created." Petition, ¶ 53 (emphasis added).

This Court has dismissed fraud claims where plaintiffs asserted similarly vague allegations against a group of undifferentiated defendants. *See Bristow First Assembly of God*, 210 F.Supp.3d at 1284. Where plaintiffs "have not even provided enough factual information—such as the specific time frame in which each Operational Defendant owned the subject property—to allow the Operational Defendants to make inferences from the scarce allegations regarding Plaintiffs' fraud claim" "Plaintiffs have not satisfied the requirements of Rule 9(b)." *Id.*

Plaintiffs' actual fraud claim is, on its face, a matter of pure conjecture, Plaintiffs cannot comply with the Tenth Circuit's requirement that they specify the time, place, content, and effect of any misrepresentation that *could be* attributed to the Marathon Defendants.

Plaintiffs' constructive fraud claim is likewise deficient. Plaintiffs' allegation that the Operational Defendants "intentionally withheld vital information," and failed to disclose the alleged contamination, thus conveying the property to the "Church's predecessors" without full disclosure (Petition, ¶ 53), is precisely the type of generic allegations prohibited by Rule 9(b). The Marathon Defendants are entitled to know the specific allegations of fraud asserted against them.

To prevail on a claim of constructive fraud, plaintiff must show that: (1) the defendant owed plaintiff a duty of full disclosure; (2) defendant misstated a fact or failed to disclose a fact to plaintiff; (3) defendant's misstatement or omission was material; (4) plaintiff relied on defendant's material misstatement or omission; and (5) plaintiff suffered damages as a result of defendant's material misstatement or omission. *Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1180–81 (10th Cir. 2008). "An individual commits constructive fraud under Oklahoma law by breaching a legal or equitable duty to the detriment of another." *Bristow First Assembly of God*,

210 F. Supp. 3d at 1291 (quoting *Young v. Dish Network, LLC*, 2015 WL 6623384, at *3 (N.D. Okla. Oct. 30, 2015) (citations omitted)). As the Tenth Circuit makes clear, "[t]o recover under a theory of constructive fraud [a plaintiff] must prove . . . [t]hat the defendant owed plaintiff a duty of full disclosure." *Specialty Beverages, LLC.*, 537 F.3d at 1180. "This duty could be part of a general fiduciary duty owed by the defendant to the plaintiff." *Id.* Alternatively, "[t]his duty could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter[.]" *Id.* In other words, "the requisite duty may arise if a party selectively discloses facts that create a false impression." *Id.* at 1181; *see also Uptegraft v. Dome Petroleum Corp.*, 1988 OK 129, 764 P.2d 1350, 1353-54 (Okla. 1988).

Plaintiffs make no effort to identify the source of the Marathon Defendants' alleged duty of full disclosure to Plaintiffs. Nothing in the Petition supports the existence of a fiduciary relationship between Plaintiffs and the Marathon Defendants. Furthermore, Plaintiffs have made no allegations that the Marathon Defendants voluntarily undertook to speak to them regarding any activities with respect to the Refineries or associated facilities. Even affording Plaintiffs a relaxed pleading standard for their constructive fraud claim, they must not be granted "license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel. Schwarz v. Coastal Healthcare Group*, 232 F.3d 902, (10th Cir. 2000) (table), 2000 WL 1595976 * 3 (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Addressing nearly identical fraud claims against most of the *same* "Operational Defendants" with regard to the *same* Church Property, this Court stated:

> Plaintiffs allege in general terms that the Operational Defendants concealed or withheld information about pollution from refinery operations and structured or restructured entities within their respective organizations in order to avoid liability. However, the Amended Complaint does not inform the Operational Defendants or the Court of the factual basis for Plaintiffs' belief…. Plaintiffs have pleaded no facts

14

to establish that any transactions involved false representations or omissions upon which Plaintiffs relied. Finally, to the extent Plaintiffs' fraud claim is based on material omissions, Plaintiffs have failed to allege any factual basis for their information and belief about such omissions. The Amended Complaint therefore does not provide the Operational Defendants with fair notice of Plaintiffs' fraud claim and the factual ground upon which it is based.

*Bristow First Assembly of God v. BP p.l.c.*, 2017 WL 3123661 *7 (N.D. Okla. July 21, 2017). Whether framed as a matter of actual or constructive fraud, Plaintiffs' claim for fraud and deceit fails to meet the required pleading standards.

### III.     Plaintiffs Fail to State a Claim for Negligence Per Se.

Plaintiffs allege that the Operational Defendants are liable for negligence per se because they have violated the Oklahoma Water Quality Act, 27A O.S. § 2-6-101 et seq. and the Oklahoma Solid Waste Management Act, 27A § 2-10-101 et seq., as well as Oklahoma's nuisance statutes, 50 O.S. §§ 1-3, 5-8, 10, 13.[2]  To establish negligence, a plaintiff must show that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty of care, and that the breach caused injury to the plaintiff. *Bristow First Assembly of God*, 210 F. Supp. 3d at 1293 (citing *Martinez v. Angel Exploration, LLC*, 798 F.3d 968, 974 (10th Cir. 2015)). "The negligence *per se* doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties." *Howard v. Zimmer, Inc.*, 299 P.3d 463, 474 (Okla. 2013). The following elements must be shown in order to establish a negligence per se claim: (1) the claimed injury is of a type intended to be prevented by the statute or regulation; (2) the injured party is a member of the class intended to be protected by the statute or regulation; and (3) the claimed injury was caused by the statutory or regulatory violation. *Id.* at 467.

---

[2] Plaintiffs' factual allegations relating to the Oklahoma Solid Waste Management Act, 27A § 2-10-101, all pertain to Operational Defendants Philip Elias and Tenneco.  Accordingly, it is unclear whether Plaintiffs contend the Marathon Defendants violated that act.

As set forth above, Plaintiffs have failed to allege facts sufficient to state any plausible injury. As the Oklahoma Supreme Court has emphasized, "negligence per se does not equate to liability per se." *Howard*, 299 P.3d at 474 (simply because the law may presume negligence from a person's violation of a statute or regulation does not mean that the law presumes such negligence to be the proximate cause of an injury). In addition, Plaintiffs fail to assert any specific factual details as to what activities attributable to the Marathon Defendants violated the referenced statutory measures.  The Oklahoma Water Quality Act has nine separate parts composed of dozens of statutory provisions.  Likewise, the Oklahoma Solid Waste Management Act has ten separate parts composed of numerous provisions. The Marathon Defendants are left to guess which, if any, provisions they are alleged to have violated. Such threadbare pleading is insufficient to apprise the Marathon Defendants of the actual grounds of the claim against them and is, therefore, insufficient to state a claim for relief.  *See Robbins*, 519 F.3d at 1248.

In addition, both the Oklahoma Water Quality Act and the Oklahoma Solid Waste Management Act are general statutes and do not impose a standard of care as would be necessary to form the basis of a negligence per se claim.  *See Ross v. Univ. of Tulsa*, 2015 WL 4064754 ** 2, 3 (N.D. Okla. July 2, 2015) (general prohibition lacks specificity necessary to provide a substitute for common law duty of reasonable care); *Alexander v. Smith & Nephew, P.L.C.*, 98 F.Supp.2d 1287, 1297 (N.D. Okla. 2000) (administrative requirements lack substantive content establishing a minimum standard of reasonable care).  Finally, both Acts were enacted decades after any alleged refinery operations had ceased. The Oklahoma Water Quality Act was enacted in 1993, the Oklahoma Solid Waste Management Act was enacted in 1970. The Petition shows that the refinery-related activities Plaintiffs seek to attribute to the Marathon Defendants occurred between 1922 and approximately 1942.  Petition, fn. 7. To establish a standard of care, a statute

must have been in place at the time of the alleged violation. *See* Vernon's Okla. Forms 2d, Okla. Uniform Jury Instructions – Civil, No. 9.10 (statute must be in effect "at the time of the occurrence"). To the extent that the Marathon Defendants' alleged conduct pre-dates the enactment of the applicable laws and regulations, the claim must be dismissed.

Oklahoma's nuisance statutes also fail to provide a basis for imposition of negligence per se. Negligence per se is intended to be used to prove a "breach of duty in a negligence action," *not to create alternate elements for a common law tort claim. See Howard*, 299 P.3d at 467 (emphasis added). There is nothing in Oklahoma's nuisance statutes to suggest a substitute standard of care exists or that an additional negligence claim exists for creating a nuisance. Plaintiffs have alleged separate and specific nuisance claims in their Petition. They cannot circumvent the established common law standard of care established by designating their nuisance claims to be instead a claim for negligence per se.

### IV.    Plaintiffs' Private Nuisance Claim Fails as a Matter of Law.

Plaintiffs allege that the "pollution caused to the Church Property and parsonage … constitutes and constituted a private nuisance." Petition, ¶ 49.   They contend that as Operational Defendants, the Marathon Defendants' activities at the Wilcox Site and the Transcontinental Refinery resulted in pollution that commingled on the Church Property, thereby causing them harm, annoyance, and inconvenience. *Id.,* ¶¶ 21, 26, 49.[3] Once again, even setting aside the fact they have failed to plead injury, Plaintiffs have failed to state a claim for private nuisance.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Nichols v. Mid-Continent Pipe Line Co.,* 933 P.2d 272, 277 fn. 15

---

[3] Plaintiff also alleges that Church parishioners and staff were harmed by the purported nuisance. Petition, ¶ 49. The Petition sets forth no basis for Plaintiffs to pursue damages on behalf of non-parties.

(Okla.1996) (quoting and adopting § 821D of the Restatement (Second) of Torts). A private nuisance arises "where a person uses his own property in such a manner as to cause injury to the property of another." *Fairlawn Cemetery Ass'n. v. First Presbyterian Church,* 496 P.2d 1185, 1187 (Okla.1972). Courts applying Oklahoma law have concluded that "an action for private nuisance is designed to protect neighboring landowners from conflicting uses of property, *not successor landowners from conditions on the land they purchased*." *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1232 (10th Cir. 2001) (emphasis added); *see also Bristow First Assembly of God*, 210 F. Supp. 3d at 1294 (dismissing claims by church and pastor for private nuisance arising from refinery activities of predecessor owner).

In *Moore*, the defendant Texaco bought land on which tanks were located and used the tanks to store oil. *Id.* at 1230-31. Decades later, Texaco sold and removed the tanks. *Id*. at 1231. Subsequently, Texaco sold the property to the plaintiff's father, upon whose death plaintiff acquired the property. The plaintiff filed suit, alleging contamination of the surface and subsurface soils, surface water and groundwater. He asserted several claims, including private nuisance. *Id.* at 1232. The Tenth Circuit determined it was likely "that Oklahoma would reach the same conclusion reached by nearly every other court to decide the issue" and hold that private nuisance does not protect successor landowners for conditions present on the land they purchase. *Id.*

In reaching its conclusion, the Tenth Circuit found *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir. 1985), to be instructive. *See Moore*, 244 F.3d at 1232. In *Philadelphia Elec. Co.,* the Third Circuit explained that historically, the role of private nuisance law was to provide a means of resolving conflicts between neighboring, contemporaneous land uses, and that "[a]ll of the very useful and sophisticated economic analyses of private nuisance remedies published in recent years proceed on the basis that the goal of nuisance law is to achieve efficient and equitable

18

solutions to problems created by *discordant* land uses." *Id.* at 314, *see also Blocker v. ConocoPhillips Company*, 380 F. Supp. 3d 1178, 1185 (W.D. Okla. 2019). This is consistent with Oklahoma authority observing "the law with reference to private nuisances is a definition of the dividing line between the right of any owner to use his property as he so desires and the recognition of that right in another." *Roberts v. C.F. Adams & Son,* 184 P.2d 634, 637 (Okla. 1947).

To the extent Plaintiffs seek to hold the Marathon Defendants liable for operations occurring within the Wilcox Site, they employ a private nuisance action as protection from conditions allegedly created on the property by the activities of predecessor owners and lessees[4] prior to Plaintiffs' occupancy of the Parsonage.  Such a claim is not cognizable under Oklahoma law.

The same reasoning that bars Plaintiffs' private nuisance claim for activities on the Wilcox Site also bars their claim for activities occurring at the Transcontinental Refinery. Neither activity "presents the danger of a *contemporaneous*, discordant use of the land." *Blocker*, 380 F. Supp. 3d at 1185–86.  The "commingling" of contaminants that Plaintiffs claim caused them harm allegedly occurred well before Plaintiffs took up residence in the Parsonage over 25 years ago in the 1990s. Oklahoma does not recognize a private nuisance action to protect "successor landowners from conditions on the land they purchased." *Moore*, 244 F.3d at 1232.  There is no reason to expect Oklahoma would entertain a private nuisance action by a successor owner's invitee *occupants* for conditions present on the land prior to their occupation.

---

[4] In *Blocker v. ConocoPhillips Co*., 380 F. Supp. 3d 1178, 1185 (W.D. Okla. 2019), the court rejected plaintiffs' argument that a successor landowner could bring a private nuisance action against a prior owner's *lessee*.  "Oklahoma would reach the conclusion that private nuisance actions could not be maintained to protect "successor landowners from conditions on the land they purchased." *Id.* (internal quotations omitted).

Even if Plaintiffs' private nuisance claim did not constitute an impermissible claim by successor occupants of land for conditions predating their occupancy, it would nonetheless be barred by the two-year statute of limitations found in 12 O.S. § 95(A)(3). *N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 293 (Okla. Civ. App.1996) (applying § 95(A)(3) to nuisance claims); *Evans v. Asarco Inc.*, 2010 WL 711193 *4 (N.D. Okla. Feb. 24, 2010) (same). Although the statute of limitations is an affirmative defense, dismissal is appropriate "when the dates given in the complaint make clear that the right sued upon has been extinguished."  *See Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

The Petition alleges that Plaintiffs vacated the Parsonage in 1995. It is simply not plausible that Plaintiffs only recently discovered that they were harmed, annoyed and inconvenienced by conditions existing on the Church Property a quarter of a century ago. Because it fails to state a claim as a matter of law, Plaintiffs private nuisance claim should be dismissed.

**V.     Plaintiffs' Strict Liability Claim is Not Legally Cognizable and is Unsupported by the Alleged Facts.**

Plaintiffs claim the Marathon Defendants are liable to them in strict liability "for all damages caused by Operational Defendants' actions and inactions, which were in violation of Oklahoma statutes and/or the rules and regulations of Oklahoma regulatory bodies." Petition, ¶ 51. Plaintiffs have failed to allege any facts showing any act or omission of the Marathon Defendants violated any statute or regulation. To the extent the strict liability claim against the Marathon Defendants rests on a violation of Oklahoma statutes or regulations, it fails as a matter of law.

Plaintiffs also allege the Marathon Defendants are liable for strict liability on the ground that they engaged in "non-exempt hazardous activities." Petition, ¶ 51. It appears Plaintiffs are alleging that operation of an oil refinery, and transportation and storage of crude oil constitute abnormally dangerous or "ultrahazardous" activities. Under Oklahoma law, "to establish a cause

of action for strict liability, a plaintiff must show that his property was damaged directly and proximately by ultrahazardous conduct." *Bristow First Assembly of God,* 210 F. Supp. 3d at 1295 (quoting *McCormick v. Halliburton Energy Servs., Inc.*, 2015 WL 918767, at *4 (W.D. Okla. Mar. 3, 2015) (citing *McDonald v. N. Am. Specialty Ins. Co.*, 224 Fed. Appx. 761, 766 (10th Cir. 2007)). As discussed in part I, above, Plaintiffs have failed to allege facts showing they suffered any injury, much less an injury attributable to the Marathon Defendants. Additionally, Plaintiffs have failed to allege facts sufficient to establish that the Marathon Defendants' alleged predecessors' oil refining, storage, and/or transportation activities constituted ultrahazardous conduct under Oklahoma law.

With respect to such claims for ultrahazardous or abnormally dangerous activities, Oklahoma follows the Restatement (Second) of Torts. *Davis v. City of Tulsa*, 87 P.3d 1106, 1109 (Okla. Civ. App. 2004). Under the Restatement, "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519. "This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." *Id.*

Whether an activity is abnormally dangerous (ultrahazardous) is a question of law for the Court. *See, e.g., Insurance Co. of North America v. Sheinbein*, 488 P.2d 1273, 1276 (Okla. 1971) (grass fire on a residential lawn not abnormally dangerous as a matter of law); *see also Taylor v. Hesser*, 991 P.2d 35, 39 (Okla. Civ. App. 1998) (operation of paintball facility is not an abnormally dangerous activity as a matter of law); *accord Restatement (Second) of Torts* § 520, cmt. 1 ("Whether the activity is an abnormally dangerous one is to be determined by the court…"). The determination requires that the Court consider the following six factors:

(1) existence of a high degree of risk of some harm to the person, land

or chattels of others;

(2) likelihood that the harm that results from it will be great;

(3) inability to eliminate the risk by the exercise of reasonable care;

(4) extent to which the activity is not a matter of common usage;

(5) inappropriateness of the activity to the place where it is carried on; and

(6) extent to which its value to the community is outweighed by its
dangerous attributes.

*Taylor* at 39 (citing Restatement (Second) of Torts § 520).

Applying the Restatement factors, Oklahoma courts (and federal courts applying Oklahoma law) have held very few activities to be "ultrahazardous" or "abnormally dangerous." Strict liability has been imposed only for keeping wild animals, *City of Mangum v. Brownlee*, 75 P.2d 174, 175-76 (Okla. 1938); using explosives, *Seismograph Service Corp. v. Buchanan*, 316 P.2d 185, 186-87 (Okla. 1957); spraying poison, *Young v. Darter*, 363 P.2d 829, 833-34 (Okla. 1961); and manufacturing plutonium rods that fuel nuclear reactors, *Silkwood v. Kerr-McGee Corp.*, 485 F. Supp. 566, 572-76 (W.D. Okla. 1979), *aff'd in part reversed in part by* 667 F.2d 908 (10th Cir. 1981), *reversed and remanded by* 464 U.S. 238 (1984), *remanded for new trial on amount of punitive damages by* 769 F.2d 1451 (10th Cir. 1985).

No Oklahoma authority has held the operation of an oil refinery or the transportation and storage of crude oil to constitute abnormally dangerous activity. *Accord Restatement* § 520 cmt. k (noting that drilling oil and gas wells in Oklahoma and Texas is not abnormally dangerous). Indeed, the Oklahoma Supreme Court has *definitively ruled* that operation of oil storage tanks and pipelines are *not* abnormally dangerous activities giving rise to strict liability. *See Gulf Pipe Line Co. of Oklahoma v. Sims*, 32 P.2d 902, 906 (Okla. 1934). Accordingly, Plaintiffs' claim for strict

22

liability as to the Marathon Defendants' alleged predecessors' operation of oil storage tanks and pipelines fails to state a cognizable claim as a matter of law.

While Oklahoma courts do not appear to have addressed a strict liability claim arising from simple operation of an oil refinery, their recognition of the value of oil and gas production to the state's economy suggests they would follow those courts rejecting such claims. *See e.g., Anderson v. Farmland Industries*, *Inc.,* 136 F.Supp. 2d 1192, 1201 (D.Kan. 2001) ("some degree of risk will always be present in the operation of a petroleum refinery, [but] an activity is not abnormally dangerous simply because it may possibly produce injury"); *Hall v. Amoco Oil Co*., 617 F.Supp. 111, 112 (Tex. S. Dist. Court 1984) (operation of a refinery in an industrial community is not an abnormally dangerous activity).

As Plaintiffs ask this Court to hold for the first time that simple operation of an oil refinery is an abnormally dangerous activity as a matter of Oklahoma law, it is their burden to allege facts sufficient to support such an expansion. *See Fletcher v. Conoco Pipe Line Co.,* 129 F. Supp. 2d 1255, 1260 (W.D. Mo. 2001); *Chaveriat v. Williams Pipe Line Co.,* 1994 WL 583598, at *5 (N.D.Ill. Oct.18, 1994).   A review of Plaintiffs' allegations regarding the Restatement factors establishes that they have failed to meet their burden.

It is the third Restatement factor that is most central to the strict liability analysis: the inability to eliminate the extreme risk of harm by the exercise of reasonable care. *See Erbrich v. Wills,* 509 N.E.2d 850, 857 (Ind. App. 1st Dist.1987) (concept of factor (c) "is at the core of § 519 liability"); *Chaveriat v. Williams Pipe Line Co.,*1994 WL 583598, at *5 (N.D.Ill. Oct.18, 1994) ("the third factor ... merits primary attention"). As observed by this Court in a case presenting facts almost identical to those alleged here, a "prerequisite for strict liability is 'not merely a highly significant risk associated with the activity itself, but a *highly significant risk that remains with the*

*activity even when all actors exercise reasonable care.*'" *Bristow First Assembly of God,* 210 F. Supp. 3d at 1295–96 (quoting Restatement of Torts (3d) § 20 (2016)) (emphasis added). The essential question to be asked is: "how likely is this type of accident if the actor uses due care?" *Fletcher,* 129 F.Supp.2d at 1261 *(*quoting *Chaveriat,* 1994 WL 583598, at *5). "Where an activity can be made *safer* by the exercise of care, it is not an ultrahazardous activity." *Id*. Throughout their Petition, Plaintiffs *concede* that the Operational Defendants' exercise of due care would indeed eliminate the "high degree of risk of some harm" to others:

> ¶ 22 "Operational Defendants *operated and maintained* the Wilcox Site *such that* pollutants were discharged in large quantities to the soil, groundwater, and surface water … during the Operational Defendants' occupancy and after they abandoned the Wilcox Site *without assuring* their operations had not and would not affect the environment or the persons and property in the surrounding area;"

> ¶ 26 "Marathon Defendants *operated* the Transcontinental Refinery *such that* pollutants were discharged in large quantities to the soil, groundwater, and surface water… and then abandoned the Transcontinental Refinery *without assuring* their operations had not and would not affect the environment or the persons and property in the surrounding area:"

> ¶ 29 "Operational Defendants were and are under a duty to prevent the contamination, injury, waste, and destruction of the Church Property, and damages to Plaintiffs, by *conducting operations so as to prevent* such occurrences and immediately remediate any contamination or injury that occurs…Defendants had a further duty…to abate the dangerous conditions and continuing nuisances which they have created, to maintain their properties so as to prevent further damage, to prevent harmful material from escaping the property onto the Church Property or other property, and to remove any such material;"

> ¶ 30 "Operational Defendants caused or allowed oil refinery feedstock, products, and other harmful chemicals to be *maintained in such a way as* to cause severe pollution and contamination;"

> ¶ 31 "Operational Defendants [allowed pollution] by failing to clean up deleterious substance spills that have occurred from their various facilities, and …*conducted their operations in a manner* that polluted the lands and waters of the State of Oklahoma;"

¶ 42 "[T]he pollution of soils and waters on Church property and adjoining properties ordinarily *would not occur in the operation of the Refineries, tank farms, and associated facilities absent some negligence on the part of the operators*"

(emphasis added).

Plaintiffs' allegations affirm that the operations of the Refineries and other facilities "can be made safe through the exercise of reasonable care." *See Fletcher*, 129 F.Supp.2d at 1261 ("the analysis of whether an activity is abnormally dangerous revolves around. . . whether the activity can be made safe through the exercise of reasonable care"). '"[I]f an activity can be performed safely with ordinary care, negligence serves both as an adequate remedy for injury and a sufficient deterrent to carelessness' and the imposition of strict liability is unnecessary." *Reece v. AES Corp.*, 2014 WL 61242, at *29, n. 16 (quoting *Fletcher*, 129 F.Supp.2d at 1261) (quoting *Chaveriat v. Williams Pipe Line Co.*, 1994 WL 583598, at *5).

Plaintiffs' allegations regarding the remaining Restatement factors fail to shift the balance in favor of strict liability. With respect to the first Restatement factor, they allege that "substances on the properties are highly dangerous" and "also have a high risk of harming the water, soils, wildlife, persons, structures, personal property, and beneficial uses on the land." Petition, ¶ 51. The dangerous nature of the substances is not the test. Under the Restatement, the legal determination of abnormal dangerousness turns not on the hazardous nature of the substance in question, but on the *activities of the defendant* handling it. *See Ind. Harbor Belt R. Co. v. Am. Cyamid Co.*, 916 F.2d 1174, 1177. (7th Cir. 1990) ("abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities").

With respect to the second Restatement factor, Plaintiffs merely recite that the "likelihood that harm would result from the Operational Defendants' activities was great, and that harm did, in fact occur and created a Superfund site." Petition, ¶ 51.  Throughout the Petition, however,

Plaintiffs contend that harm was likely specifically because of the manner in which refinery operations were conducted. *See* Petition, ¶¶ 22, 26, 29, 30, 31, 42.  A claim for strict liability for abnormally dangerous activity is deficient when the pleading "is read in it is entirety [and] it is apparent that . . . plaintiffs are challenging not what defendants do, but how they do it." *Reece v. AES Corp.*, 2014 WL 61242 * 7 n. 16, (E.D. Okla., Jan. 8, 2014), aff'd 638 Fed. Appx. 755, (10th Cir. 2016),

As for the fourth Restatement factor, Plaintiffs allege that refinery operation "is not a matter of common usage in Oklahoma as is evident from the fact that only approximately four (4) refineries are currently operated in this state and only approximately 140 refineries are currently operated in the entire United States." Petition, ¶ 51. Although the statistics cited by Plaintiffs make clear that refinery operations are common today, Plaintiffs neglect to address whether crude oil refining was a common activity when the Refineries at issue here were in operation. The Petition itself alleges that the time in question, there were at least two, and likely three oil refineries operating within a mile of each other. Petition, ¶ 22 ("Operational Defendants are former operators of the oil refineries … at the Wilcox Site), ¶ 24 ("Marathon Defendants are former operators of the oil refineries … approximately ¼ mile north of the Church (the 'Transcontinental Refinery'"), ¶ 25, Figure 5 (showing the relative location of the Lorraine and Wilcox Refineries), ¶ 33. Figure 7 (showing the location of both the Lorraine Refinery and Wilcox Refinery on the Wilcox Site). From the Petition it appears that refinery operations were quite a common activity in Creek County, Oklahoma.

With respect to the fifth Restatement factor, Plaintiffs state that the "refining and associated facilities were located in an inappropriate position in an environmentally-sensitive area … which allowed contamination of a much larger rea than would otherwise have been affected." Petition, ¶

51. This is another instance of Plaintiffs applying contemporary standards to historical activities. Those portions of the Petition cited above show that at the time the Refineries were in operation, they were sited in an active industrial zone.

Finally, Plaintiffs make no serious effort to address the sixth Restatement factor by showing that the Refineries' alleged great risk of harm outweighed the benefit of refinery operations which supplied a burgeoning population and fueled critical U.S. World War efforts in the early and mid-1900s.  They simply state without factual support that the "danger of the pollution and its impact on life and property greatly outweighed any value to the community where the facilities were located."

Applying the same Restatement factors, the U.S. District Court for Kansas concluded that the operation of an oil refinery is not an abnormally dangerous activity under Kansas law. *Anderson*, 136 F. Supp. 2d at 1201. "While the court is mindful that some degree of risk will always be present in the operation of a petroleum refinery, '[a]n activity is not abnormally dangerous simply because it may *possibly* produce injury.'" *Id.* (quoting *Ludwikoski v. Kurotsu,* 840 F.Supp. 826, 829 (D.Kan.1993). *See also, Chaveriat,* 1994 WL 583598 at *6 ("The inevitability of some harm does not imply that reasonable care cannot erase the high risk of great harm that triggers strict liability under § 520."). Likewise, here an analysis of the Restatement factors shows that operation of the historical Refineries would not constitute an abnormally dangerous activity under Oklahoma law.  Plaintiffs' claim for strict liability should be dismissed.

## <u>CONCLUSION</u>

As demonstrated above, Plaintiffs' Petition should be dismissed in its entirety as Plaintiffs fail to allege facts showing they suffered injury attributable to the acts or omissions of the Marathon Defendants.  In the alternative, the Marathon Defendants respectfully request that the

Court dismiss Plaintiffs' actual and constructive fraud, negligence per se, private nuisance, and strict liability claims for failure to state a claim pursuant to Rule 12 (b)(6).

Respectfully submitted,

/s/Kenneth H. Blakley

_____

**Kenneth H. Blakley**, OBA #11227
  Direct: (405) 848-8300
  KBlakley@elbattorneys.com
**Robert D. Edinger**, OBA #2619
  REdinger@elbattorneys.com
**Jacqueline G. Stone**, OBA #14327
  JStone@elbattorneys.com
**Travis W. Brown**, OBA #32597
  TBrown@elbattorneys.com
**EDINGER LEONARD & BLAKLEY, PLLC**
6301 N. Western Ave., Suite 250
Oklahoma City, OK 73118
Telephone: 405-702-9900

**ATTORNEYS FOR MARATHON DEFENDANTS**

I hereby certify that on March 31, 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Allan DeVore
Archer Scott McDaniel
Dawson Andrew Brotemarkle
Mark Banner
Melissa Ann East
Michael J Blaschke
Mike Walter Jones
Stacy L Acord
Steven J. Adams
Timothy J. Sullivan

I hereby further certify that on March 31, 2021, I served a courtesy copy of same by electronic mail to the following:

James E. Key (jkey@hfblaw.com)
Michael K. Reer (mreer@hfblaw.com)

/s/Kenneth H. Blakley