## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHNNY DALE FLOYD, VIRGINIA FLOYD, )
JENNIFER GAIL ROBINSON, )
LORENA ANN GOFORTH and )
JOANNA PAUL, )
         )
         Plaintiffs, )
         )    Case No. 21-CV-00132-GKF-CDL
v. )
         )
B.P. p.l.c., ATLANTIC RICHFIELD )
COMPANY, BP CORPORATION )
NORTH AMERICA, INC., )
BP AMERICA INC., BP PIPELINES )
(NORTH AMERICA) INC., )
MARATHON OIL CORPORATION, )
MARATHON OIL COMPANY, )
MARATHON PETROLEUM )
CORPORATION, MARATHON )
PETROLEUM COMPANY LP, )
KINDER MORGAN, INC., )
EPEC OIL COMPANY LIQUIDATING )
TRUST, EL PASO TENNESSEE )
PIPELINE CO., L.L.C., EL PASO )
ENERGY E.S.T. CO., EPEC OIL )
COMPANY, MIDWESTERN GAS )
TRANSMISSION CO., BOLIN OIL )
COMPANY, DANIEL HOUSTON )
BOLIN, DANIEL PHILLIPS BOLIN, )
ROBERT LEE BOLIN, )
CHARLES WILLIAM BOLIN *and the* )
*successors of the Bolins*, and )
PHILIP ELIAS, )
         )
         Defendants. )

## **OPINION AND ORDER**

      This matter comes before the court on the Motion to Remand [Doc. 43] of plaintiffs Johnny

"Dale" Floyd, Virginia Floyd, Jennifer Gail Robinson, Lorena Ann Goforth, and Joanna Paul

(collectively, "Floyd Family").  For the reasons set forth below, the motion is granted.

## I.      Background

This case relates to a Superfund site in Creek County, Oklahoma.  Plaintiff Johnny "Dale" Floyd was previously employed as the pastor of Bristow First Assembly of God from approximately 1991 through 1995.  During that time, the Floyd Family resided in the parsonage, which was located on Church Property.  [Doc. 2-2, p. 3, ¶ 1].

The Church Property is adjacent to what is known as the "Wilcox Site."  The Floyd Family alleges that all of the defendants except Midwestern (collectively, "Operational Defendants") previously operated oil refineries, tank farms, pipelines, lands, and related facilities at the Wilcox Site.  [Doc. 2-2, pp. 16, 23, ¶¶ 22, 30].  The Operational Defendants allegedly operated and maintained the Wilcox Site such that pollutants were discharged in large quantities into the soil, groundwater, and surface water, and maintained in the soils, groundwaters, and surface waters. Thereafter, the Operational Defendants allegedly abandoned the Wilcox Site without assuring their operations had not and would not affect the environment or the persons and property in the surrounding area.  [*Id.*].

On November 6, 2020, the Floyd Family filed a Complaint in the District Court in and for Creek County, State of Oklahoma against twenty-one defendants.[1]  [Doc. 2-2, pp. 2-45].  On March 24, 2021, Kinder Morgan removed the case to this court on the basis of the court's diversity jurisdiction, 28 U.S.C. § 1332.  [Doc. 2].  In the Notice of Removal, Kinder Morgan asserts that Midwestern and Elias—who like plaintiffs Johnny "Dale" Floyd, Virginia Floyd, and Joanna Paul are Oklahoma citizens—have been "fraudulently joined" in order to defeat diversity and therefore

---

[1] The Floyd Family originally filed a Petition in the District Court of Creek County, State of Oklahoma [*see* Doc. 2-2, pp. 2-45] and defendant Kinder Morgan, Inc. removed the matter to this court [*see* Doc. 2].  For consistency with the Federal Rules of Civil Procedure, the court refers to the Petition in this case as the Complaint.

removal is proper.  [Doc. 2, pp. 8-12].  The Floyd Family moved to remand the case to state court. [Doc. 43].  Kinder Morgan responded in opposition to remand [Doc. 44], and the Floyd Family filed a reply.  [Doc. 46].

## II.     Remand Standard

"A defendant may remove a civil action initially brought in state court if the federal district court could have exercised original jurisdiction."  *Salzer v. SSM Health Care of Okla., Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (citing 28 U.S.C. § 1441(a)).  "However, a federal court must remand a removed action back to state court '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'"  *Id.* (quoting 28 U.S.C. § 1447(c)).  "The party invoking federal jurisdiction has the burden to establish that it is proper, and 'there is a presumption against its existence.'"  *Id.* (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).  "[A]ll doubts are to be resolved against removal."  *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982).

Kinder Morgan seeks to invoke this court's diversity jurisdiction.   [Doc. 2, p. 1]. "Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State."  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).[2]

As previously stated, Kinder Morgan argues that Elias and Midwestern, the only non-diverse defendants, are improperly—or fraudulently—joined.  [Doc. 2, p. 8].  To establish fraudulent joinder in the Tenth Circuit, "the removing party must demonstrate either: (1) actual

---

[2] Diversity jurisdiction also requires the "matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a).  The Floyd Family alleges damages in excess of the jurisdictional amount. *See* [Doc. 2-2, p. 25, ¶ 33].  The amount in controversy requirement is therefore satisfied.

fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). Defendants who assert an inability of the plaintiff to establish a cause of action against a non-diverse party, like Kinder Morgan, "must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court."[3] *Montano v. Allstate Indem.,* 211 F.3d 1278, at *1 (10th Cir. 2000) (unpublished table decision) (quoting *Hart v. Bayer Corp*., 199 F.3d 239, 246 (5th Cir. 2000))[4]; *see also Smoot v. Chicago, Rock Island & Pac. R.R. Co*., 378 F.2d 879, 882 (10th Cir. 1967) ("This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."); *Bristow First Assembly of God v. BP p.l.c.,* 210 F. Supp. 3d 1284, 1288-89 (N.D. Okla. 2016); *Sang v. Smith,* No. 19-CV-00686-GKF-FHM, 2020 WL 6472683, at *3 n.3 (N.D. Okla. May 19, 2020). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano,* 211 F.3d at *2 (citing *Batoff v. State Farm Ins. Co*., 977 F.2d 848, 851-53 (3d Cir. 1992)).

"[U]pon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Smoot*, 378 F.2d at 882 (internal citation omitted). "The defendant seeking removal bears a heavy burden of

---

[3] Kinder Morgan relies solely on the second basis.

[4] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher,* 733 F.3d at 988 (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

### III.   Remand Analysis

As previously stated, Kinder Morgan asserts that two defendants are fraudulently joined to destroy diversity—Midwestern and Elias.  Because the court concludes that Kinder Morgan fails to satisfy its "heavy burden" of establishing that there is no possibility that the Floyd Family would be able to establish a cause of action against Midwestern in state court, the court does not consider plaintiffs' claims against Elias.  *Dutcher*, 733 F.3d at 988; *Montano,* 211 F.3d at, at *2 ("Remand is required if any one of the claims against the non-diverse defendant[s] . . . is possibly viable."); *see also Green v. Amerada Hess Corp.,* 707 F.2d 201, 207 (5th Cir. 1983) ("Even if [plaintiff] were [precluded] from pursuing all his claims save one in state court, a remand would be necessary.").

The Complaint includes the following allegations directed to Midwestern:

19.    . . . At the time of the events giving rise to Plaintiffs' claims against Midwestern, but only recently disclosed to Plaintiffs, Midwestern was the sole shareholder of EPEC, and received payment of approximately $93,000,000 in accounts receivable shortly after EPEC learned of EPEC's potential liability for contamination of the Church property and other property.  However, despite knowing that Plaintiffs (and others similarly situated to Plaintiffs) held claims against EPEC related to predecessor liability concerning the Wilcox Site, EPEC dissolved and transferred assets to Midwestern without any notice and without the knowledge of Plaintiffs and others of EPEC's existence, potential liability or dissolution.  Under applicable Delaware and/or Oklahoma law, Midwestern is liable for all or part of the claims brought against EPEC because: (a) EPEC had actual knowledge of claims and obligations related to the Wilcox Site; (b) EPEC did not make reasonable provision to pay all obligations related to the Wilcox Site; and (c) EPEC nonetheless distributed its assets to Midwestern (the sole stockholder).

***

36.     By way of further example, and not by way of limitation, and upon information and belief, in or around 1994 EPEC was notified by government representatives of possible pollution related to the Wilcox Site. Shortly after learning of its potential liability for the Wilcox Site, EPEC (a subsidiary of El Paso Energy Corporation) purported to transfer its accounts receivable (amounting to approximately $93 million) to Midwestern (EPEC's sole shareholder and, at the time, a subsidiary of El Paso Energy Corporation), and Midwestern, in turn, purported to transfer the accounts receivable to Tennessee Pipeline (another subsidiary of El Paso Energy Corporation). EPEC then created the Trust to hold its remaining assets and liabilities, including those related to the Wilcox Site, with EPE (yet another El Paso Energy Corporation subsidiary – this one created for the sole purpose of serving as trustee) serving as trustee, and with the Tennessee Pipeline (again, an El Paso Energy Corporation subsidiary) being named as the sole beneficiary of any remainder trust assts.

***

## SEVENTH CLAIM FOR RELIEF
## (FRAUDULENT TRANSFER AND CONSPIRACY – EPEC TRUST)

60.     EPEC, Tennessee, the Trust, and EPE (and their successor, Kinder Morgan), and Midwestern are also liable for fraudulent transfer. Specifically, upon notice that DEQ was investigating pollution at the Wilcox Site, EPEC attempted to dissolve and distribute all assets to affiliate and subsidiary companies while retaining all liability for the Wilcox Site (as an entity without assets).   To achieve this goal, EPEC, Tennessee, the Trust, Midwestern, and EPE engaged in a multi-level, conspiratorial scheme of constructive fraud.

61.     On or about December 18, 1998, EPEC (an El Paso Energy Corp. subsidiary) filed a certification of dissolution.

62.      Upon information and belief, EPEC never gave landowners or any residents living on the Wilcox Site (or any other persons in the Bristow, Oklahoma, area) notice of dissolution or the right to make claims regarding pollution from the Refineries.

63.     Upon or near dissolution, EPEC made a fraudulent mass transfer of its remaining asserts (approximately $93,000,000 in accounts receivable) to Midwestern, the sole shareholder of EPEC at that time.

64.     Midwestern then fraudulently transferred those accounts receivable to Tennessee (another El Paso Energy Corp. subsidiary).

65. On or about March 9, 2001, approximately three years after filing the certification of dissolution, long after all the Defendants had been contacted regarding their liability for the pollution at the Refineries, and years after Tenneco's fraudulent cover-up activities, EPEC created the Trust and placed its remaining assets in the Trust, with EPE (another El Paso Energy Corp. subsidiary) as trustee and Tennessee as beneficiary.



Figure 13: How El Paso entities moved assets from one affiliate to another.

66. The transfers from EPEC to Midwestern and the Trust were transfers fraudulent to creditors within the meaning of 24 Okla. Stat. § 116 because EPEC made the transfers either with actual intent to hinder, delay, or defraud those harmed by the contamination or without receiving a reasonable equivalent value in exchange for the transfer. Further Midwestern and EPE (as trustee) did not accept the transfer of assets from EPEC in good faith and for a reasonably equivalent value. Kinder Morgan has ratified the action of its predecessors and has sought to retain the benefits derived from the wrongful actions and inactions.

67. Plaintiffs expressly seek: (a) a determination that the scheme was fraudulent and conspiratorial; (b) avoidance of the transfer or obligation to the extent necessary to satisfy their creditor claims; (c) attachment or other provisional remedy against the assets transferred or other property of the transferees as provided by law; and (d) any other relief the circumstances may require including any relief sought herein under other claims for relief, whether legal or equitable, actual or punitive, statutory or common law.

[Doc. 2-2, pp. 13-14, 26-27, 41-44 ¶¶ 19, 36, 60-67 (internal footnote omitted)].

Based on these factual allegations, Kinder Morgan characterizes the Floyd Family as asserting a single claim for fraudulent transfer pursuant to the Oklahoma Uniform Fraudulent Transfer Act, Okla. Stat. tit. 24, §§ 112 *et seq.* (OUFTA), against Midwestern.  The Floyd Family disagrees, arguing that they also assert a claim for civil conspiracy premised on the fraudulent transfers against Midwestern.[5]  [Doc. 43, p. 24].

Under Oklahoma law, "[a] civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means."  *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997).  "[C]ivil conspiracy itself does not create liability.  To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means."  *Brock*, 948 P.2d at 294; *see also Gaylord Ent. Co. v. Thompson*, 958 P.2d 128, 148 n.86 (Okla. 1998) ("A conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim.").  Each member of the conspiracy is responsible for the acts of his or her co-conspirators in furtherance of the conspiracy, and "[t]he gist of a civil action for conspiracy is damages and not the conspiracy."  *Barsh v. Mullins,* 338 P.2d 845, 847 (Okla. 1959).  Thus, "a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort."  *Hitch Enters., Inc. v. Cimarex Energy Co*., 859 F. Supp. 2d 1249, 1268 (W.D. Okla. 2012) (quoting *Brock*, 948 P.2d at 294 n.66).

---

[5] The Floyd Family also claims to assert a common law fraud claim against Midwestern.  [Doc. 43, p. 24].  However, the court cannot reasonably construe the Complaint to assert a common law fraud claim.

Kinder Morgan argues that the Complaint is too generalized to plausibly allege a civil conspiracy claim.[6]  Under Oklahoma law, "[t]he essential elements are:  (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (quoting *Closs v. Goose Creek Consol. Indep. Sch. Dist.,* 874 S.W.2d 859, 871 (Tex. App. 1994)).

The Complaint includes allegations that Midwestern and two or more entities—specifically, the Kinder Morgan Defendants (EPEC, Kinder Morgan, Tennessee, the Trust, and EPE)—engaged in a "multi-level, conspiratorial scheme" in order to fraudulently transfer $93 million of EPEC's accounts receivable to various subsidiaries.  [Doc. 2-2, pp. 41-42, ¶ 60].  The Floyd Family asserts that EPEC and related entities did so to hinder, delay, and defraud claimants related to the contamination at the Superfund site and avoid using the funds to satisfy creditor claims related thereto.  [Doc. 2-2, pp. 13-14, 26-27, 41-42 ¶¶ 19, 36, 60-67].  Construing these allegations in favor of the Floyd Family as the court must, the Complaint sufficiently alleges (1) two or more entities (the Kinder Morgan Defendants and Midwestern); (2) an object to be accomplished (avoidance of attachment of the funds to creditor claims); (3) a meeting of the minds; (4) an unlawful, overt act (the fraudulent transfer); and (5) damages.

Regardless, Kinder Morgan asserts that the civil conspiracy claim fails because "the existence of an unlawful overt act presupposes that Plaintiffs have a valid claim for fraudulent transfer.  . . . [T]hey do not." [Doc. 44, p. 20].  Because civil conspiracy under Oklahoma law

---

[6] Kinder Morgan does not explicitly contend that the heightened pleading standard set forth in Okla. Stat. tit. 12, § 2009 applies to a civil conspiracy claim premised on fraudulent transfer pursuant to Okla. Stat. tit. 24, § 116.  Thus, the court does not decide the issue.  Moreover, even if the heightened standard applies, the Floyd Family has satisfied it.

requires an unlawful act, the court must determine whether there is any possibility that the Floyd Family can establish a fraudulent joinder cause of action pursuant to Okla. Stat. tit. 24, § 116(A) in Oklahoma state court.  Section 116 states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> 1. with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> 2. without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>    a. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or
>
>    b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Okla. Stat. tit. 24, § 116(A).  Kinder Morgan asserts that they cannot state a valid claim for five separate reasons:  (1) the claim is an impermissible suit against EPEC's sole shareholder pursuant to Okla. Stat. tit. 12, § 682; (2) the Floyd Family has not alleged the necessary elements of a fraudulent transfer claim; (3) the claim is time-barred; (4) Midwestern is not a debtor to the Floyd Family, nor is the Floyd Family a creditor of Midwestern; and (5) Judge Kern previously rejected similar claims in related cases.  The court separately considers each argument.

A.    *Shareholder Suit Pursuant to Okla. Stat. tit. 12, § 682*

Title 12, section 682 of the Oklahoma statutes provides, in relevant part, as follows:

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied.  This provision includes, but is not limited to, claims based on vicarious liability and alter ego.  *Provided, nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct, act or contractual obligation, not within the scope of their role as an*

> *officer, director or shareholder, arising out of or in connection with their direct involvement in the same or related transaction or occurrence.*

Okla. Stat. tit. 12, § 682(B) (emphasis added).  Thus, "Oklahoma law does not prohibit a suit based on an officer's, director's or shareholder's direct involvement with the transaction or occurrence at the heart of the lawsuit." *Sauders v. Mangum Nursing Ctr., LLC*, 377 P.3d 180, 184 (Okla. Civ. App. 2016).  That is, the statute prohibits suits against a limited liability company's member or manager based solely on the person's status as a member or manager in the company, "but it does not prevent a person from being sued directly for his own conduct." *Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-CV-0681-CVE-JFJ, 2017 WL 6397492, at *5 (N.D. Okla. Dec. 14, 2017).

As discussed above, the Floyd Family alleges that EPEC transferred approximately $93 million of accounts receivable to Midwestern.  [Doc. 2-2, pp. 26-27, ¶ 36].  The Floyd Family alleges that Midwestern accepted the transfer and, further, "purported to transfer the accounts receivable to Tennessee Pipeline (another subsidiary of El Paso Energy Corporation)."  [*Id.*].  The Complaint includes allegations that Midwestern did not accept the transfer of assets from EPEC in good faith and for a reasonably equivalent value and, further, that the transfer from Midwestern to Tennessee Pipeline was fraudulent.  [Doc. 2-2, pp. 42-43, ¶¶ 64, 66].  Accordingly, the Complaint includes allegations that Midwestern was directly involved in the alleged fraudulent transactions and Midwestern is being sued for its own wrongful conduct.[7]  Thus, § 682 does not apply to preclude the Floyd Family's claims against Midwestern.

---

[7] Likewise, the Complaint includes allegations of direct involvement against EPEC.  Moreover, the court notes that EPEC and the other Kinder Morgan Defendants have not sought to dismiss the fraudulent transfer and conspiracy claim based on application of § 682.  *See* [Doc. 19]; *see also* [Doc. 9; Doc. 18].

B.      *Elements of a Fraudulent Transfer Claim*

Turning to the necessary elements of a fraudulent transfer claim, as previously stated, §
116(A)(1) applies to transfers made or obligations incurred by a debtor "if the debtor made the
transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of
the debtor." Okla. Stat. tit. 24, § 116(A)(1).  Kinder Morgan argues that the Complaint includes
no allegations that Midwestern "intended to hinder, delay, or defraud" the Floyd Family.  However,
as previously stated, the Complaint includes specific allegations that Midwestern acted
"fraudulently," which requires intent under Oklahoma law.  [Doc. 2-2, pp. 42-43, ¶¶ 64, 67]; *see
also Howell v. Texaco Inc.,* 112 P.3d 1154, 1161 (Okla. 2004).  Further, as recognized by Kinder
Morgan, the Complaint alleges that *EPEC* "made the transfers either with actual intent to hinder,
delay, or defraud those harmed by the contamination."  [Doc. 2-2,  p. 43, ¶ 66].  As discussed
above, the Floyd Family asserts a civil conspiracy claim against Midwestern and, under Oklahoma
law, "each of the conspirators participating in such conspiracy are responsible for the acts of any
one of said conspirators done in furtherance of such conspiracy."  *Barsh,* 338 P.2d at 847.  Finally,
insofar as an allegation that Midwestern acted with actual intent to hinder, delay, or defraud is
necessary, Kinder Morgan has not shown that the Floyd Family would not be permitted to amend
their Complaint to include the necessary allegations.  *See Bellman v. NXP Semiconductors USA,
Inc.,* 248 F. Supp. 3d 1081, 1134 (D.N.M. 2017) (internal quotations and alterations omitted) ("The
Court has previously explained that a claim is possibly viable if with amendment it would state a
cause of action."); *Rangel v. Bridgestone Retail Operations*, *LLC*, 200 F. Supp. 3d 1024, 1034
(C.D. Cal. 2016) ("If there is a possibility that the plaintiff could amend his pleading to state a
cause of action against the allegedly sham defendant, then remand is warranted."); *Archuleta v.
Taos Living Ctr., LLC*, 791 F. Supp. 2d 1066, 1076-77 (D.N.M. 2011) (original pleading's lack of

specificity was not determinative of fraudulent joinder analysis because "the question before the Court is whether 'any one' of [plaintiff's] claims is 'possibly viable'").  Kinder Morgan has not shown that there is no possibility that the Floyd Family could allege that Midwestern acted with actual intent to defraud.

C.    Statute of Limitations

Kinder Morgan contends that the fraudulent transfer claim is time-barred.  Section 121 of the OUFTA states:

> A cause of action with respect to a fraudulent transfer or obligation pursuant to the provisions of the Uniform Fraudulent Transfer Act, Section 112 et seq. of this title, is extinguished unless action is brought:
>
> 1.    Pursuant to the provisions of paragraph 1 of subsection A of Section 116 of this title, within four (4) years after the transfer was made or the obligation was incurred or, if later, within one (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> 2.    Pursuant to the provisions of paragraph 2 of subsection A of Section 116 of this title or subsection A of Section 117 of this title, within four (4) years after the transfer was made or the obligation was incurred[.]

Okla. Stat. tit. 24, § 121.  As set forth above, the Floyd Family plausibly alleges the elements of civil conspiracy to commit a fraudulent transfer against Midwestern and, further, a fraudulent transfer claim against EPEC under § 116(A)(1).  Thus, under § 121, the applicable statute of limitations is four years from the transfer or when the obligation was incurred, or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.  See Okla. Stat. tit. 24, § 121(1).

The Floyd Family filed the Complaint in Creek County on November 6, 2020.  See [Doc. 2-2].  The Complaint includes a specific allegation that the relevant transactions were only recently disclosed to them [Id. at pp. 13-14, ¶ 19].  And, in the motion to remand, the Floyd Family invokes the one-year discovery rule.  [Doc. 44, p. 17].  Kinder Morgan contends that the relevant

transactions were "indisputably discoverable by April 2019" at the latest and therefore plaintiffs' case is untimely even under the one-year discovery rule.  In this regard, Kinder Morgan directs the court to the EPEC Oil Company Liquidating Trust Agreement, which was produced in a separate civil case related to the Superfund site.  *See Bristow First Assembly of God v. BP p.l.c.*, No. 15-CV-00523-GKF-CDL (N.D. Okla. Apr. 20, 2020), [Doc. 273-1].  However, the Floyds are not a party to that litigation and therefore would not have received any document production related thereto.  Further, although plaintiffs' counsel in this matter represents plaintiffs in that other matter, Kinder Morgan offers no evidence as to when the Floyd Family first contacted or retained their counsel such that an agency relationship existed.  Thus, production of the EPEC Oil Company Liquidating Trust Agreement in the separate, earlier case is not dispositive as to when the Floyd Family could have reasonably discovered the relevant transaction.

Interpreting the Oklahoma common law discovery rule, federal courts in this jurisdiction have stated, "[w]here there is conflicting evidence regarding application of the discovery rule, the question of when the plaintiffs knew or should have known is a question of fact for the jury to decide."  *Auto. Consulting Res., Inc. v. Interstate Nat'l Dealer Servs., Inc.,* No. 17-CV-225-JED-FHM, 2020 WL 6994213, at *2 (N.D. Okla. Oct. 8, 2020).  Further, as previously stated, "[t]he defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff."  *Dutcher,* 733 F.3d at 988.  Resolving all factual issues in favor of the Floyd Family, Kinder Morgan fails to satisfy its burden to demonstrate that the claims against Midwestern are time-barred.[8]

---

[8] The court further notes that EPEC and the other Kinder Morgan Defendants have not argued that conspiracy or fraudulent transfer claims are time-barred as asserted against them and Midwestern is alleged to have engaged in a civil conspiracy to commit a fraudulent transfer with those entities. *See* [Doc. 19]; *see also* [Doc. 9; Doc. 18].

D.      *Debtor and Creditor Relationship*

Kinder Morgan next argues that the Floyd Family cannot possibly establish a claim against Midwestern because Midwestern is not a debtor to the Floyd Family, nor is the Floyd Family a creditor of Midwestern.

The OUFTA defines "creditor" as "a person who has a claim" and a "debtor" as "a person who is liable on a claim." Okla. Stat. tit. 24, §§ 113(4), (5). "'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Okla. Stat. tit. 24, §§ 113(3). Federal courts applying Oklahoma law have held that a "'creditor' includes a person with unlitigated legal claims against the debtor," pointing to the "whether or not the right is reduced to judgment" language included in the statute's definition of "claim." *Racher v. Lusk*, No. CIV-13-665-M, 2013 WL 6037122, at *9 (W.D. Okla. Nov. 14, 2013); *see also Wootton New Holland, LLC v. Cap. Mach. 1 Corp.*, No. CIV-16-1434-F, 2018 WL 2473996, at *10 (W.D. Okla. Apr. 6, 2018). This is because "a debtor-creditor relationship is created not by a judgment, but by the wrong which produces the injury[.]" *Racher,* 2013 WL 6037122, at *9 (quoting *Dominguez v. Eppley Transp. Servs., Inc*., 763 N.W.2d 696, 703 (Neb. 2009)).

Kinder Morgan argues that, because the Complaint does not allege that Midwestern "is in any way liable for the alleged contamination of the Church Property, Plaintiffs have no claim or right to payment from Midwestern." [Doc. 44, p. 18]. However, as previously stated, the Complaint can be reasonably construed to allege that Midwestern *conspired* to commit a fraudulent transfer with the Kinder Morgan Defendants. The Complaint includes allegations that EPEC and the other Kinder Morgan Defendants, as "Operational Defendants," negligently operated and maintained the Wilcox Site. As a result, the Operational Defendants "have created a condition

- 15 -

dangerous to the health and safety of Plaintiffs, the Church staff, Church parishioners, and others." [Doc. 2-2, p. 23, ¶ 30].  Thus, although not reduced to judgment, the Floyd Family has a disputed right to payment arising from the Superfund Site against the Operational Defendants.

The court notes that the Kinder Morgan Defendants include no specific arguments directed to the existence of a "claim" against them in the motion to dismiss.  [Doc. 19].  However, the Kinder Morgan Defendants incorporate by reference the motion to dismiss filed in this case by the Marathon Defendants.  [Doc. 19, p. 2].  The Marathon Defendants argue that "[p]laintiffs cannot allege any facts to show that they are creditors of the Marathon Defendants under the Oklahoma Uniform Fraudulent Transfers Act, 24 O.S. §§ 112 et seq." because "[a] cause of action for fraudulent transfers under the OUFTA does not accrue until recovery of judgment against the debtor."  [Doc. 18, p. 10 n.1 (citing *Eskridge v. Nalls*, 852 P.2d 818, 820-21 (Okla. Civ. App. 1993))].  Based on *Eskridge*, the Marathon Defendants, and by extension the Kinder Morgan Defendants, argue that plaintiffs lack standing and no justiciable controversy exists.

*Eskridge* is unpublished and therefore not precedential.  Okla. Sup. Ct. R. 1.200(d)(2). Nor is the case persuasive as, in *Eskridge*, the Oklahoma Court of Civil Appeals was interpreting the statute of limitations for transfers made prior to November 1, 1986.  *Eskridge*, 852 P.2d at 820. The court explicitly did not consider "the applicability of the 1986 Fraudulent Conveyances Act [OUFTA] to the conveyances involved in this action."  *Eskridge,* 852 P.2d at 821.  Nor did the court contend with the OUFTA's language defining a claim as "a right to payment, *whether or not the right is reduced to judgment* . . . ."  Okla. Stat. tit. 24, § 113(3) (emphasis added).  Thus, the court declines to conclude that the Floyd Family lacks standing based on *Eskridge*.

E.      *Judge Kern's Prior Orders*

Finally, Kinder Morgan argues that claims against Midwestern brought in similar cases in the Northern District have already been rejected as being "meritless and brought in bad faith." *See* [Doc. 44, pp. 26-28 (citing *Bristow First Assembly of God v. BP p.l.c*., No. 15-CV-00523-TCK-CDL (N.D. Okla. Sept. 10, 2020), [Doc. 283]; *Lane v. BP Am. Prod. Co*., No. 15-CV-00524-TCK-CDL (N.D. Okla. Sept. 10, 2020), [Doc. 290]; *Lee v. BP Am. Prod. Co*., No. 15-CV-00525-TCK-CDL (N.D. Okla. Sept. 10, 2020), [Doc. 282]).  The court has reviewed the referenced orders and Judge Kern did not opine as to the merits of the fraudulent transfer claim.  Nor did he contend with allegations of conspiracy against Midwestern.

Rather, Judge Kern's orders were issued in the context of the respective plaintiffs' motions for leave to file second amended complaints, which required the court to consider whether there had been "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bristow First Assembly of God* No. 15-CV-00523-TCK-CDL, [Doc. 283 at pp. 3-4 (quoting *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005))].  Judge Kern first concluded that plaintiffs' undue delay in filing the motion to amend "weigh[ed] heavily against" amendment.  *Bristow First Assembly of God,* No. 15-CV-00523-TCK-CDL, [Doc. 283 at p. 6].  Likewise, based on the case's lengthy procedural history, Judge Kern concluded the proposed amendment would result in undue prejudice to the existing defendants. [*Id.* at p. 7].

With respect to bad faith/dilatory motive, the court summarized defendants' contention that the circumstances and timing of plaintiffs' motion to amend gave rise to an inference of bad faith and dilatory motive, specifically noting the following arguments *raised by defendants*:

- "**[Defendants] point out** that the motion was filed only three weeks before the deadline for dispositive motions."

- "Additionally, **Defendants contend** that Plaintiffs' only basis for adding the nondiverse party, Midwestern, is that it allegedly passed through to its parent El Paso Tennessee Pipeline Co., a receivable distributed by its subsidiary EPEC Oil Company and that 'Plaintiffs could have prosecuted its (meritless) claims without Midwestern as a defendant and would suffer no injury.'"

- "**[Defendants] also argue** that because Midwestern is not affiliated with any existing Defendant, it would need to retain separate counsel . . . ."

*Bristow First Assembly of God* No. 15-CV-00523-TCK-CDL, [Doc. 283 at p. 8 (emphasis added)].

Finally, Judge Kern reasoned that, because the addition of a non-diverse party would destroy diversity jurisdiction, the proposed amendment was subject to heightened scrutiny. [*Id*. at p. 9]. Based on all of these factors, "the Court conclude[d] that Plaintiffs' *late attempt* to add new claims and a nondiverse Defendant evidences bad faith." [*Id.* (emphasis added)].

Significantly, Judge Kern rejected defendants' argument that the proposed public nuisance claim was time-barred and therefore did not find the futility of amendment factor to weigh against amendment. However, because "all other factors" weighed against allowing the requested amendment, Judge Kern denied the motion.

Based on the court's review of the relevant Orders, it is clear that Judge Kern did not meaningfully consider the merits of the fraudulent transfer/conspiracy claim asserted in the Complaint. Rather, Judge Kern considered the merits arguments in the context of whether plaintiffs' belated request to amend evidenced bad faith. Thus, Judge Kern's prior decisions regarding the claims against Midwestern do not require a finding that the Floyd Family's claims in this case lack merit.

*F.     Summary*

For the foregoing reasons, the court concludes that Kinder Morgan fails to satisfy its "heavy burden" of establishing that there is no possibility that the Floyd Family would be able to establish a cause of action against Midwestern in state court. *Dutcher*, 733 F.3d at 988; *Montano*, 211 F.3d at *1. Because the court must therefore consider Midwestern's citizenship, diversity jurisdiction has not been established and the case must be remanded. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## IV.     Conclusion

WHEREFORE, the Motion to Remand [Doc. 43] of plaintiffs Johnny Dale Floyd, Virginia Floyd, Jennifer Gail Robinson, Lorena Ann Goforth, and Joanna Paul is granted. The Court Clerk is hereby directed to remand this action to the District Court for Creek County, State of Oklahoma.

DATED this 22nd day of December, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE